UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20835-CR-Moore/Garber

UNITED STATES OF AMERICA,

v.

VINCENT HAM,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge

K. Michael Moore.  Pursuant to such reference the Court has received the defendant Ham's Motion

to Suppress [DE 18] and the government's response in opposition.  A hearing on said motion was

held on November 15th, 2007, and the defendant appeared with his attorney of record, Vincent Farina,

Esquire, and the government was represented by Assistant United States Attorney  Christopher J.

Hunter.

## FACTUAL BACKGROUND

**State's Version:**

On or about August 2, 2007 the Miami-Dade Police Department (MDPD) received a tip from

Crime Stoppers that drugs were being sold at 1250 N.W. 62nd Street, Apartment Four, in Miami,

Florida, and the seller was described as a bearded black male known as "Ham." On October 7th,

2007, based upon said tip, members of the MDPD proceeded to 1250 N.W. 62nd Street, apartment

Four, arriving at approximately 3:20 P.M. Detectives Alcides Velez, with MDPD for three and a half

years , and Ruperto Peart, with five years law enforcement experience, approached the front door of

Apartment Four. The officers testified, at the hearing, that they were wearing plain clothes and their badges were displayed on shirts or vests identifying them as police officers. Each officer testified that they each carried a firearm that was holstered and never held by them.

Detective Velez testified that he knocked on the front door and was accompanied by Detective Peart. Velez stated that the defendant opened the front door but remained in the hallway, at which time Velez identified himself as a police officer and explained that the police were present since they had received information that drugs were being sold on the premises. Velez testified that the defendant Ham was calm, responded in English, and clearly understood the nature of the conversation. The defendant produced identification that revealed that he was the same person referred to in the Crime Stoppers tip.

The defendant advised the detectives that he resided in the apartment, which he rented, and that his girl friend, later identified as Katrina Rolle, was also there. Shortly thereafter Katrina Rolle came to the door. Upon being asked by the officers, the defendant stated that he would consent to a search of the premises. The defendant, standing in the hallway, then executed a Consent to Search form, which had been produced by Detective Romero of MDPD. Detective Velez advised that he filled out the initial portion of the consent form, which he then gave to the defendant, who reviewed it and signed it in his presence, while he was seated on a cooler in the hallway.

Katrina Rolle told the police that she had lived in the apartment with the defendant but had not lived there for the preceding two months as a result of an argument with the defendant. She also told police that she was there on that particular day visiting and still had clothing in the apartment. Rolle was given a consent form, which she reviewed, and signed it while in the hallway, in the presence of Velez and Peart. Detective Velez testified unequivocally that neither he nor members of

2

the police unit on the premises entered Apartment Four prior to the execution of the consent to search forms. Cross examination of Velez disclosed that prior to the search the defendant was removed from the apartment but following the execution of the consent forms and search the defendant was then brought back inside the apartment. Velez testified that at no time did the defendant say that the officers could not search the apartment and that at no time did Katrina Rolle make any reference to a child being in the apartment.

**Defendant's Version:**

Katrina Rolle was called by the defense and she acknowledged that she was in Apartment Four on October 2, 2007. She testified that she has six children who were in the courtyard of the building at the time of the events described herein. She stated that she was sleeping in the apartment and heard noise at the front door. She said that she was awakened by three police officers who had entered her bedroom. She testified that the police officers wore masks and she was instructed to go into the living room. When asked if she lived there, she said she did not at the time but did reside there until approximately two months prior to October 2, when she moved out because of an "altercation" with the defendant. She said that she relinquished her rights to the apartment and that the defendant signed a new lease.

Rolle said that the police told her that things would go easier for her if she signed a consent to search, which she did in the presence of two officers in the living room. She denied any knowledge of drugs on the premises. She later executed a statement in which she stated *inter alia* that if any drugs were found on the premises, they were not hers but belonged to the defendant. She testified that such statement was included since the police had told her to write it implicating the defendant.

3

The defense then called Detective Peart, whose testimony was essentially corroborative of the testimony of Officer Perez. He advised that the police were wearing civilian clothing but also wore shirts or vests identifying them as law enforcement officers. They also wore badges and each had firearms that were holstered during the entire incident. He stated that Officer Velez knocked on the front door and the defendant answered the knock. The police officers identified themselves as law enforcement officers and further advised of the tip that they had received and their reasons for being on the premises. The defendant then came outside and no one entered the apartment at that time. Detective Peart acknowledge that following the execution of the consent to search forms, several of the officers donned face masks and entered the premises to conduct the search. He further testified that at no time were their weapons removed from the holster.

Officer Peart advised that Katrina Rolle came to the door in response to an officer's directions that she do so. Peart testified that he did not personally observe the execution of the consent forms and did not take any statements from the defendant or Rolle.

The defendant testified on his own behalf. He acknowledged that he had obtained a new lease about two and one-half months earlier since his "common law wife" Rolle had left.

Ham stated that on the day of the search he heard noise at the front door and that masked police officers pushed open the front door and entered the premises. He also testified that their guns were drawn and that one officer was carrying a rifle. He stated that he was then handcuffed and removed from the apartment while a search took place. Ham also testified that he executed a written Consent to Search form following his removal from the premises and after being threatened that Rolle would be arrested and her children taken away if he did not execute the form. He also testified that

4

an officer had entered Rolle's bedroom, told her to get up, and then took her outside the premises.

Ham testified that he had never been advised of his constitutional rights notwithstanding the fact that he executed a *Miranda* form under duress.

## DISCUSSION

As is the case in most Motions to Suppress Evidence, a key issue becomes the credibility of witnesses. Here, the question is whether the consents to search were freely and voluntarily given by the defendant and Katrina Rolle. Since Rolle had relinquished her leasehold interest in the apartment and the defendant had executed a new lease, it is not necessary for the Court to consider the issue of the voluntariness of Rolle's Consent to Search. A determination regarding the issue of voluntariness and absence of coercion may be based upon the totality of the circumstances. *United States v. Purcell*, (236 F.3d 1274, 1281 (11th Cir. 2001).

The Court finds, based upon the highly credible testimony of Detectives Velez and Peart, neither of whom have an interest in the outcome of this case, that the defendant voluntarily executed the Consent to Search form, free of any coercion from law enforcement. The defendant was advised of the purpose of the presence of the officers who did not draw their weapons, made no threats, advised the defendant in writing of his right to refuse to consent to the search.[1] No show of overwhelming force was not made by the officers compelling the defendant to execute the consent form. In the case of *United States v. Ramirez-Chilel*, 289 F.3d 744, 751-52 (11th Cir. 2002), the Eleventh Circuit has held that consent was voluntarily given where officers did not brandish their

---

[1] The Consent to Search form contains clear and unambiguous language that the defendant may refuse to consent and may require that a seach warrant first be obtained prior to any search of the premises.

weapons and did not show overwhelming force. The Court, based upon the evidence and totality of circumstances, finds that the Consents to Search were freely and voluntarily given, free from any oppressive coercion. Thus, it is clear to the Court that the defendant was fully cognizant of his right to refuse to consent to the search but freely elected to execute the form, resulting in the subsequent search of the apartment and the ultimate finding of contraband.

The defendant, having been charged with substantial offenses, certainly has a strong and compelling interest in the outcome of this case. The Court finds his testimony to not be neither compelling nor credible since the Court finds him to be intelligent and articulate and did thus understand that he was free to choose not to voluntarily consent to the search. His testimony regarding the alleged threats to his girlfriend Rolle is not found to be credible since the evidence fails to show him present at the time of such alleged threats and coercion.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the submissions and argument of the parties, the undersigned respectfully

RECOMMENDS that the defendant Vincent Ham's Motion to Suppress be DENIED.

**The parties have eight (8) days[2] from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge K. Michael Moore.** See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

---

[2] Ordinarily a ten day period is allowed for objections. Due to the fact that this cause is set for trial to commence on November 26, 2007, the Court has shortened the time for objections to this Report and REcommendation.

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 15th

day of November, 2007.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
U.S. District Judge Moore
Counsel of record

7